May it please the Court, Dennis Freedman. I am the attorney for the appellant in this case, Arthur Stone. This is a matter where Mr. Stone filed a complaint in Federal District Court. Help me understand this. I mean, it's clear, I assume, that the requirements are that if someone's getting disability payments, even if they're in fact, as we would think of it, able-bodied and able to do the requirements of the job and therefore not disabled physically, if they're receiving payments for disability, that by definition, receiving that payment means that they are disabled. Is that right? Not fully. No, no. It's not right? The receipt of disability does not mean that you are not fully recovered? That is correct. And what are you relying upon for that? Pardon me? What are you relying upon for that? Is there a regulation or something that says that? There is, to my knowledge, there is no regulation that says that if an individual receives disability payments that he is deemed to be disabled. Individuals receive payments from all different areas that may be improper. And if they're improper, they are subject to an overpayment assessment. Well, is that any kind of collateral estoppel? Is that similar to a judicial estoppel? And I've never heard of the doctrine before, and I won't go too far down this road, but it's almost like an implied judicial estoppel, because you're going into court in a situation where not you, obviously, your client. We are arguing disability, and at the same time the client is arguing disability and unable to do the job. I'm sorry, at the same time they're going to court saying that they're able to do the job, they're assuming, they're accepting payments which are conditioned upon and paid out based upon the person not being able to do the job. Is there any kind of an inherent estoppel that that gives rise to, other than collateral? In all due respect to you, Judge McKee, that's a loaded question. Mr. Stone, loaded question. It's totally loaded. I mean, it's totally charged up. It's big time loaded. But it's one of my own problems. The reason why it's a loaded question is that Mr. Stone was claiming that he had recovered. He had provided medical information. He had a doctor's certificate. Yes. But how can he, how can one say, I'm okay, don't send me any more checks? That is exactly the point. What mechanism did he have to say to the government? We're asking you. Well, that is the point that I'm making. The fact that Mr. Stone announced to the agency and announced to the Department of Labor that he was fully recovered, what motivation would there have been for the Department of Labor to continue to pay him benefits? But the issue here is one of collateral estoppel, right? Correct. That's the real issue on which Judge DelSalle decided the case. And isn't the real question whether he was relying, whether the EEOC was relying upon the administrative judge's determination or whether they were relying on the MTSB, whatever you want to call it. I mean, it seems to me if the EEOC determination was based upon the administrative judge's determination and Judge DelSalle said, well, you're collaterally estopped because of the administrative judge's determination, that can't be because that's in the same line of proceedings. And he had an obligation actually to review that de novo as compared to saying that an opinion in the chain, if you will, of proceedings constituted an estoppel. Does that make sense? You're looking at me with a furrowed brow. Yes, I'm sorry. What do you view his collateral estoppel ruling to have relied upon? I guess that's the question. He had relied on the fact that there was a final and unappealable judgment on the issue as to whether. Where? What was the final unappealable judgment on the issue? That's the question. Yes, that is the issue in this case. Well, if the EEOC said, and I think it did say, that the EEOC AJ found the complainant continued to receive benefits and that the administrative judge from which the EEOC was the appeal, correct? No, the appellant in this case, Mr. Stone, had a right to challenge the failure of the government to restore him to his job, to the EEOC. Okay, but my point is the appeal comes to the EEOC from the agency, from the administrative judge, correct? That is my, the administrative judge was an EEOC administrative judge. There was a full-blown EEOC hearing. The hearing was before an EEOC administrative judge, and the administrative judge ruled that Mr. Stone established a prima facie case of discrimination, but that the agency articulated a legitimate non-discriminatory reason, and therefore Mr. Stone did not prevail in his discrimination case. And then that comes to Judge DelZell for a determination de novo. That is correct. And so the point is there is no final unappealable order where the matter was totally litigated. Indeed, Judge DelZell's obligation was de novo to review the EEOC ruling, correct? Well, the case was dismissed based on a Rule 12B1 motion to the effect that Mr. Stone was collaterally a stop from advancing his discrimination claim based on the fact that the issue had previously been decided, and under statute, I'm sorry. And it wasn't previously decided, you're saying? That is correct. And nobody tried to get in touch with the doctor who said he was cured. Well, the issue in this case, that is correct, but I don't believe that that was the issue that Mr. Stone was advancing in this case. Well, he tried to advance a Title VII. Pardon me? He tried to advance a Title VII claim. The Rehabilitation Act. Right. I think it should have been the Rehabilitation Act, yeah. And his claim was under the Rehabilitation Act of 1973. He didn't claim that. He claimed Title VII, didn't he? My understanding of the complaint was that he alleged a claim under the Rehabilitation Act. May I just posit an example? Under the law, an individual who recovers from a compensable injury, and we're talking about Federal Government employees, have an automatic right to be restored to their job if they have recovered within 12 months. Under what statute? Under what? You say they have that. What gives them that? That is a regulatory provision. She's asking you for the regulation. It's 5 CFR Section 353.301. 353.102? 353.301. 301A. And 3353.304. Now, let me posit this example. What if an individual who had prior real activity notifies the agency that he has recovered and has presented evidence to show that he has recovered, and he has done this within six months of the deadline date? The argument is that the imposition of this, you're still receiving checks, is discriminatory and that would be a pretextual basis for firing. Is that your argument? That's a very good argument. I didn't realize. I thought that's what it was. It's a good argument. The claim that Mr. Stone was making was that the agency and the Department of Labor intentionally delayed in processing something. Under the Department of Labor regulations and under the agency regulations, it's important. Okay. So the fact that he was still receiving checks is because they were being dilatory, because it was a form of discrimination. Right. And their argument was we can delay for up to a year, and as long as we issue checks, you are not considered to be. Was there an attempt to provide notice at any line of this incredible procedural chain, give notice to the fact finder or the adjudicator, whoever that was, of the fact that Mr. Stone had tried, either by letter or email or somehow, tried to tell the issuing agency, the agency issuing those checks, look, I'm okay, my doctor says I can go back to work, stop sending me the checks. Was anything like that put into evidence at any point or submitted? Well, we were at the stage where there was a complaint filed, and there has been no discovery whatsoever. But it's a matter of allegation on your part that he did, you know, I let them know, and notwithstanding that, they continued to send checks, even though I told them that I'm fully recovered and to stop sending checks, and here's the doctor's opinion. Even besides that, the doctor's certification to the complaint. Was there anything like that? And how would the tribunal know that, yeah, he's still receiving checks, but he's told them to stop sending me the checks? Because then you've got your cases joined. You're saying, I'm recovered, I can go back to work. Here's my doctor, says this guy can go back to work. I'm still getting checks, yeah, but look, if they want to put money in my pocket, I'm going to tell them, I'm not going to tell them, no, I've tried to tell them, stop sending me the checks. They're delaying the processing to keep me from getting back to work. Here's the fact that that drains it, if you've done that. Might I say that the issue that the court is focusing on, I believe, is not the nub of the appeal. No, it's not, but it's the issue that you stubbed your toe on all along the way. That is the issue that you have stubbed your toe on, your client has stubbed his toe on at every step of the proceeding. That's what I'm trying to get to. It may not be the issue you want to argue to us, but it would clarify things. Mr. Stone wanted to return to work. He had reached out to the agency. He was not getting any type of response at all. What Judge McKee said is, did he say to the agency, look, I tried to do this. Did he ever tell the agency to whom he applied for the job again, hey, I'm not, I'm receiving the checks, but I don't want them. Right. Cash is one easy way to stop it. Would one, for instance, what if Mr. Stone had refused to cash checks that were given to him in order for him to live? These were salary checks. What if he refused to cash the checks and the 12-month period passed, and at that point he did not have the right to be restored unconditionally, and then the agency said. Too late. That's a good point. What happened with the D.C. Circuit? That was broadly dismissed from failure to prosecute. The Federal Circuit does not have jurisdiction over any type of discrimination claim. It was dismissed from failure to prosecute, I thought, not for 12B1 or 12B6. Correct. But the discrimination claim could not have been raised in the U.S. Court of Appeals for the Federal Circuit. But it was raised there, wasn't it? It was filed there. Well, there was an appeal filed. But even if the appeal had been pursued, he would have to have waived his claim of discrimination. Okay. So you're saying it was filed and, I guess, wasn't formally withdrawn. I guess it was just abandoned. Correct. Because at some point in time, you or someone realized they didn't have jurisdiction over it. Right. And might I add that there is a regulation that I referred to, which was 10 CFR. There was a regulation that I referred to that was promulgated by the Department of Labor. Department of Labor is the — You can give it to us when you get up after. Yeah. Okay. Meanwhile, we'll hear from Mr. Bernstein. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Richard Bernstein. I'm an Assistant United States Attorney, and I represent the Secretary of Homeland Security. Your Assistant U.S. Attorney where? In the Eastern District of Pennsylvania. Oh, okay. I've not seen you before. In Philadelphia. How long have you been over there? Pardon me? I've not seen you before. How long have you been over there? Sixteen and a half years. And I'll argue to Your Honor, and I hasten to add, I shudder to imagine if there's a movie about this case, what would it be? But I'm sure Bob Sausman is delighted to hear that. I'll work on that during your argument, but I'll be paying attention to your argument nevertheless. Can you put your mic down just a little bit? I think it — Put your mic down just a little bit. Tell us what Judge Dalzell decided. What did he look at when he was deciding there was collateral estoppel here? Your Honor, Judge Rendell, he looked at the entirety of the procedural history of this controversy, and I think — He doesn't note that. He talks about the EEOC. But, Your Honor, he also talks about — he talks about an initial MSPB proceeding, a second MSPB proceeding, a proceeding in this — in the United States District Court for the Eastern District of Pennsylvania prior to the one before Judge Dalzell, a proceeding in the Federal Circuit, a proceeding in the EEOC, and then the district court case, which brings us here today. But he was denying — I'm sorry. Tell us how somebody can stop getting checks when he says, I'm not disabled anymore. Your Honor, I don't know the answer to that question, but it would seem to me one could communicate directly with the Department of Labor and say, Mr. Stone here, I feel fine. Terminate my payments. Yeah, but Mr. Friedman makes a good point. You do that after you've got another source of income to live on, after you get your job back. Then you do that. You don't do that when you need to eat and pay your rent and mortgage, do you? I'm not — It's against 22. I'm not sure I understand. Mr. Friedman is arguing he's got to get checks. He's got to eat. He's got to live. Now, he doesn't know how long this administrative process is going to spread out. Like most administrative processes. Right. So I assume he's arguing, you give me my job back and I get a paycheck, I'll be happy to give up my disability. You don't take away my disability when I don't know if I'm going to have a paycheck coming in. Your Honor, I don't think he's pled it quite that way. I don't think he says — Well, how can he do that? I don't know. It's beyond my tenure, Your Honor. The Work Is Calm program, I cannot address the specifics of the Work Is Calm program. What I can say is that there was a period of time during which Mr. Stone continued to receive Work Is Calm benefits. He never denied that. He received them, and incidentally, this is not in the record, but it's information I've received in the last few days. Well, it's not very helpful to us. We don't know if your mom told you this or we don't know where you got it from. TSA, that he received benefits from 2007 to 2011 and thus fell squarely within the OPM regulation, which said he has not fully recovered. Well, I understand that if you're receiving checks — I mean, the issue in this case is not — well, I understand if you're receiving checks, they can assume that you're still disabled. And so the question is, he says he's not disabled, so how can he stop receiving the checks and eat? Right. Excuse me, Your Honor, if I may. It's not a question of making an assumption. It's a question of what the OPM regulation provides. Well, where is that regulation? It says if you're getting checks, you are not disabled. That is 5 CFR section 353.102. And if the court would permit — Could you repeat that? 5 CFR 353.102. It's in the — Okay. 5 CFR section 353.102. Fully recovered means, quote, compensation payments have been terminated on the basis that the employee is able to perform all of the duties of the position he or she left or an equivalent. Mr. Bernstein, did not the district court ignore a key allegation of the amended complaint? And that allegation is paragraph 52, the agency sabotaged Stone's return to work by deliberately violating its laws, regulations, policies, by intentionally delaying the processing of his return to work request, and by working in concert with the OWCP in its effort to ensure they were not making a bona fide effort to promptly determine that Stone had fully recovered from his compensable injury. I mean, isn't that a key contention that totally undermines the idea that you say, oh, well, he was continuing to receive checks, so he didn't recover, and this has been decided? Doesn't that place it square? And then the next thing is Stone requests judicial review and a trial to no vote on all issues in this complaint. Your Honor, that doesn't change the fact, and Judge Dalzell goes to that. Judge Dalzell knows, and this is- He ignores the fact that this is a discrimination complaint. The problem, by conceptualizing it as a discrimination complaint, and then saying that automatically entitles Mr. Stone to a do-no-vote proceeding in the district court, is that there is at the threshold an insurmountable legal deficiency in his claim, which he himself concedes. In some ways, it could be you could, for example- And what is that? That he was not fully recovered within the plain meaning of the applicable regulation by OPM. But it's the fact that he's receiving checks is because they didn't stop it, and they didn't, you know, sabotage him. Your Honor, I think it's helpful to understand that, if I might, that there's a long history to this controversy. There were two proceedings in the MSPD. There was a proceeding in the district court before the case, the present case. There was a proceeding in the Federal Circuit. There was a proceeding in the EEOC. Well, it doesn't belong there. Wasn't that the wrong place to put it, in the Federal Circuit? May I come back to that in just a moment and finish the one thought that it was a complaint and an amended complaint? In all that time, the word sabotage was never used. And if you read his brief, Mr. Stone's brief for appellant, the word appears, I think, twice. None in the summary of the argument and then none in the reply brief. Does MSPB consider discrimination claims? It was. It seems to me that that wasn't placed to bring the discrimination. It wasn't, and I will fully concede the intricacies in the esoterica of the MSPB are beyond my ken. You stated that very clearly. Well, it's certainly beyond ours. Let me go back momentarily to the procedural history. He's terminated in 2007. He contests that before an ALJ of the MSPB. The ALJ sustains the agency. They go to the full board. The full board sustains the ALJ. The next year he comes back, has to be restored, and the ALJ says, I lack jurisdiction to consider this claim, whatever it involves. Because you're not fully recovered. Correct. Precisely. He takes that to the full MSPB, and the full MSPB says, yup, the ALJ got it right. He takes that and he goes to the United States District Court for the Eastern District of Pennsylvania. That's what I call stone room and wine. Wait, he went to the ALJ, then he went to the EEOC. All right. Go ahead. Oh, yes, I know. If I might, Your Honor. And then it sends down to DC. I respectfully would disagree with that. There are some overlapping events here. We're now into 2009. The full MSPB has said, yup, the ALJ got it right. That's the end of that. He's not fully recovered because of this regulation, which Mr. Stone does not dispute. At this point, the next thing he does, there's a little confusion about the dates, the chronology in 2009. It doesn't really matter. The next thing he does is he files a complaint in the United States District Court to seek review of the determination by the MSPB that it lacked jurisdiction precisely because he was squarely within this OPM reg. The district judge, we then move to this, government moves to dismiss, and the district court sustains that motion, noting that he was not fully recovered precisely because he continued to receive benefits. Because he couldn't stop them. He never, he didn't say that in that case. And a point which he didn't dispute dismisses the case. He then goes to the, and he did not seek review of the district court's judgment in that case in this court. This is in Stone Roman I. He then goes to the federal circuit, whereas Judge McKee has quite rightly pointed out he was dismissed for failure to prosecute. Overlapping with this, Judge Rendell, is the EEO thing. Okay? And that then brings us, I could walk through the various stages of that. How have you kept all this straight in your mind? Well, Your Honor, it's by writing it down. Is that a big diagram? I have a cheat sheet here, and if I take my eyes off of it, I'm going to get it wrong. But this is the point, we're on appeal from the EEOC, and the EEOC, the ALJ said there was no discrimination. And the EEOC affirms there's no discrimination. And then it comes to us for determination as to whether there was discrimination. And isn't this a matter that, I mean, it comes to the district court. It was a discrimination. And isn't it de novo review when it comes from the EEOC as to whether they were correct that there was no discrimination? But, Your Honor, what was determined, what was questioned in the EEOC was the legality of the actions by the agency Well, it was a pretext. Pardon me? Pretext. Well, this complainant made numerous arguments. He offered no evidence the agency's reasons were pretextual. That's what the EEOC found. What the EEOC found was that the ALJ had correctly ruled that Mr. Stone was not fully recovered for the reasons we've stated. Because of 353.102. Pardon me? Because of 353.102. Correct, correct, Judge McKee, that's absolutely correct. Well, we also find the agency has articulated legitimate non-discriminatory reasons for its action. The complainant has not shown the reason to be a pretext. So it decided a discrimination case that then comes de novo to the district court, does it not? Your Honor, the language that the EEOC uses is the language which typically is used. What I think we have to do is get under that. Typically is used where? In discrimination cases. Is get under that. Suppose one way to look at this. It's fair to say the agency engaged in a reprisal did not establish the agency articulated reasons for its actions were pretextual. I'm sorry. One way to look at this is that you could look at other ways that plaintiffs could be barred at the threshold. For example, statute of limitations, failure to exhaust, lax standing, or fails to state a claim upon which relief could be granted. And I want to make sure I squeeze that in before my time's up because those are two issues that the district court did not address, but I believe this court could because they're supported by the record. No way. And plaintiff doesn't dispute those things. So if there was a determination that he was untimely or failed to exhaust, we might be in exactly the same place. They might have used the rhetoric, if you will, the parlance. I just don't understand why when this comes from the EEOC to the district court and the EEOC determined that there was no pretext, that that issue does not come squarely before the district court for de novo review. That's what it's all about. If I might, I appreciate that, Your Honor, but let me suggest a hypothetical. I go to the community beach and I apply for a job. Now, let me ask, what collaterally is Knopson? Because there's been time and again there's been a determination which he does not dispute. No, there was a determination at this MSNPSB or whatever where discrimination was not at issue. The only place discrimination has been decided is in the EEOC proceeding. It's a different issue. But, Your Honor, there may be numerous reasons for not moving forward on those allegations. For example, if he were timebombed, might I suggest Moving forward on what allegations? I just don't get it. Well, he alleges, well, and they shift. And I'd like to emphasize, and I'm running very short on time. That's all right. I'd like to emphasize that We haven't stopped you. Go ahead. Well, I got another 29 seconds. All right. We'll give you an additional minute. That, I apologize. I now have lost my name. We made you lose your truth. Yeah, I wanted to You wanted to give us an analogy. Yes. Suppose I go to the community beach and I apply for a job as a lifeguard. Question one, can you swim? I answer no. They say, you are Well, you say no. I say no. Okay, you say no. Yes, I say no. I can't swim. They say, well, Mr. Bernstein, I'm sorry. And then I run off. You can't have this job. And I run off and I file an EO claim. Now, how about instead of you saying that you can't swim, they put you in the water and you swim. You swim and you do it and they say, oh, you didn't do it within 20 seconds. So we're saying you can't swim. Yes, I am. And you're saying, wait a minute, I did. You know, there has to be some finding on their part or some ruling on their part that you're saying is discriminatory. Maybe the closer analogy is that there's a set of criteria, I don't meet them, and I don't dispute that I don't meet them. At this point, I go off and I file an EO claim, and whoever that's before says, you're barred at the threshold. It's as if you had been untimely or you had failed to exhaust. I see my time is up. If I might take ten more seconds just to say that beyond this issue, we think the claims shifted, as the district court quite rightly noted, from complaint to First Amendment complaint to Second Amendment complaint, retaliations out. What we have now is a claim based on a perception of disability. It fails to state a claim upon which relief can be granted under the then-applicable law, Sutton v. United Airlines, and it was untimely. He did not timely exhaust that claim. That's set forth in our brief, and I would respectfully object. Excuse me. I'm still trying to figure out. We know you're trying to get away, Mr. Bernstein. I'm sorry, Your Honor. We know you're trying desperately to get away from that. No, no, no, no. Make yourself comfortable. I just don't want to overstay my welcome. You're not going to have to. The problem is that he was receiving checks, right? And by definition, under the regs, if you're receiving disability checks, you are not disabled. You're not fully recovered, even though you may have fully recovered. You may actually have some. So how does he get to say, before what, which of those, where does he say, I am fully recovered? Here's my doctor who said it. I don't. I am not competent to address these. Isn't that the norm of this case? I'm not sure what the norm is. Just say no. No, sit there. If there's anything else I can do to assist. There's nothing else. Thank you, Your Honor. You're welcome. This is a total loss. I would like to be presumptuous, and I would ask for the court's indulgence. I've been a federal employment law attorney for 30 years.  There is a controlling statute dealing with restoration rights. So one must look at the statute first. The statute is 5 U.S.C. section 8151. That's cited in footnote 14 of the brief for appellant. In the statute, it states that someone is entitled to restoration benefits if he has overcome an injury or disability. That's the language in the statute. It doesn't say the termination of benefits. Now, there were regulations that were promulgated both by the Office of Workers' Compensation Programs and the Department of Labor. Now, since the Department of Labor administers the OWCP program, they should be controlling. But according to the statute, and this is the confusion, the statute says that OPM, which is the administrative arm of the government, the Office of Personnel Management, can promulgate regulations consistent with the statute. The regulations that were promulgated by the Office of Personnel Management states that fully recovered means compensation payments have been terminated on the basis that the employee is able to perform all of the duties of the position that he or she has left or an equivalent one. So that's really an administrative. It's a technical. But didn't you allege three things? And at least the district court said that you did. And the second thing that you alleged was that your OWCP benefits were terminated on the basis that you fully recovered from the injury and that separation was substantially related to the injury. Wasn't that alleged? Yes. But they were terminated. Pardon me? I just asked you if you alleged that the OWCP benefits were terminated on the basis that you fully recovered from the injury. Did I allege that the OWC? Yes, that's what he's asking. It's five and six of the opinion. That's what he says you allege. Oh, no. No, no, no. That was the problem in the case. It cites 8151B, which is what Mr. Bernstein just mentioned to us. May I cite the Department of Labor regulations, which is in the same footnote, 20 CFR section 10.503. Is your point that the regulations are impermissible based upon the statutory language? I'm not sure what you're getting at. I am sorry. When you sat down before, we gave you time to finish your citation to 10 CFR. I'm not sure what that was supposed to be. I think it ends up being five CFR. Okay. Very, very briefly. The fact that the MSPB didn't find jurisdiction doesn't mean that an individual has not recovered from a compensable injury. To give you examples. Wait, does this involve swimming? Pardon me? Does this involve swimming, the example? No. Okay. The examples are, for instance, the Merit Citizens Protection Board is a quasi-judicial agency of limited subject matter jurisdiction, only certain types of cases. So, for instance, if a probationary employee alleges discrimination and files an appeal with the MSPB, the MSPB would dismiss that case. But it doesn't foreclose the individual from continuing with his claim of discrimination. In the same instance, if someone files an appeal, the MSPB, saying that he was not promoted based on religious reasons, for instance. Non-promotion cases are not within the jurisdiction of the MSPB. Does that foreclose the individual from pursuing his discrimination claim in the EEOC form? Are you asking us the answer is no? Pardon me? That goes along the lines of my questions to opposing counsel, correct? So the fact that the MSPB was relying on a specific regulation which held that the MSPB did not have jurisdiction because under a particular regulation the term fully recovered means that OWCP benefits stop, doesn't mean that there was not discriminatory action taken by the agency. Okay. Thank you very much, Mr. Finner. Thank you. And Mr. Finner, you said you had argued before me. Several times, Your Honor, but it's been about 10 years. Okay. You're trying to let me off the hook, aren't you? You're trying to let me off the hook. Yes. He can swim. Well, 13 years ago, roughly. Okay. But several cases, Your Honor. Okay. So the fact that I did not remember does not mean either that my memory is slipping or that your representation was not memorable. Not at all, Your Honor. Okay. It was good seeing you again today. Nice to see you, Your Honor. Thank you, Your Honor. And Mr. Freedman, thank you very much. He's Freedman. They left an I out of his name. Oh, I'm sorry. I was just told they left an I out of your name, Mr. Freedman, as Mr. Freedman. Freedman. It doesn't matter. Just get out of here. I don't know what I did. I don't remember. I still don't remember. I didn't make up this story. It's so neat.